**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN M. MARTINEZ, JR., | ) | CASE NO. 1:14-CV-94 |
| | ) | |
| Petitioner, | ) | JUDGE HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| JASON BUNTING, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Juan M. Martinez, Jr. ("Martinez" or "Petitioner") for a

writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Martinez is in the custody of

the Ohio Department of Rehabilitation and Correction pursuant to journal entry of

sentence in the case of *State of Ohio vs. Martinez*, Case No. 03-CR-116 (Seneca

County May 24, 2011).  (Doc. No. 10-1 at Ex. 12.)  For the reasons set forth below, it is

recommended that the petition be dismissed with prejudice.

**I. Factual Background**

The state appellate court reviewing Petitioner's direct appeal noted the following

relevant facts:

> On April 10, 2003, Martinez was stopped while driving a
> white van. Martinez was stopped by a Hancock County
> Sheriff's Deputy at the request of Kip Lewton ("Lewton"), a
> DEA agent from Toledo. No reason for the stop was given.
> Immediately after the van was stopped, officers who had
> been following the vehicle in an unmarked vehicle
> surrounded the van. Lewton seized Martinez's cell phone
> and asked Martinez his identity. Martinez was asked to exit

the van and consent to a search of the van, which he did. Lewton then began scrolling through the recent calls on the cell phone while other officers searched the van. No request for permission to search the contents of the cell phone was made and no authorization was given. Martinez then walked back with the deputy who checked his license number. Dispatch returned information that Martinez was driving while under an administrative license suspension and Martinez was arrested for this violation. Small amounts of marijuana and marijuana paraphernalia were found in the van.

Subsequent to the stop of the vehicle, Lewton was notified that a warrant for the house which the DEA had been watching had been obtained. The request for the warrant had been made prior to the stop and no information gathered from the stop was used to obtain the warrant. Lewton then proceeded to inform Martinez that a warrant to search his home had been obtained and questioned Martinez concerning where they might find drugs in the house. Martinez told Lewton where to find the drugs, Lewton relayed this information to the officers who had arrived at the residence, and the police located marijuana and cocaine in the home.

*State v. Martinez*, No. 13-04-49, 2006-Ohio-2002, ¶¶ 2-3 (Ohio App. Ct. Apr. 24, 2006)

("*Martinez I*").

## II. State Procedural History

**A.    State Trial Court Proceedings**

In May 2003, the State filed a three-count indictment charging Petitioner with one count of possession of cocaine (Count One) and two counts of possession of marijuana (Counts Two and Three).  (Doc. No. 10-1 at Ex. 1.)  In August 2004, Petitioner unsuccessfully moved to suppress the evidence obtained as a result of both the search warrant and the warrantless search of his vehicle.  *Martinez I*, 2006-Ohio-2002 at ¶ 4. At trial, with respect to Count Two of the Indictment, the State presented evidence

2

related to the marijuana discovered in a Ford Probe parked in Petitioner's driveway, and, with respect to Count Three, the State presented evidence related to the marijuana discovered in a freezer in Petitioner's residence.  (Trial Transcript ("Tr.") at 155-57, 247-48, 259-61, 622-24.)

After the close of evidence, a jury convicted Petitioner of all three counts.  (Doc. No. 10-1 at Ex. 3.)  In October 2004, the trial court imposed concurrent and consecutive terms of imprisonment totaling 15 years.  (Doc. No. 10-1 at Ex. 4.)  Specifically, the trial court imposed: a seven-year term of imprisonment on Count One (possession of cocaine); a two-year term of imprisonment on Count Two (possession of marijuana); and an eight-year term of imprisonment on Count Three (possession of marijuana), with the sentences for the second and third counts to run concurrently with one another, and consecutive to the sentence for count one.  (*Id*.)

**B.    Direct Appeal**

Petitioner, through attorney Debra Kovac Rump, filed a timely notice of appeal. (Doc. No. 10-1 at Ex. 5.)  He asserted the following assignments of error on appeal:

> I.    The trial court erred in not finding the search warrant to be constitutionally defective because the reliability of the informant and the probable cause to search were not established within the four corners of the affidavit.  It also erred in not granting suppression of the warrantless searches of Martinez's cell phone and car, and in [not] suppressing statements he made after his arrest.
>
> II.    Defendant's sentence is violative of the Sixth Amendment because the sentencing judge improperly made findings of fact.  Alternatively, the sentence is not supported by clear and convincing evidence in the record and is otherwise contrary to law.

3

> III.  The prosecutor engaged in misconduct during closing
> arguments by advocating constructive possession as
> a theory by which Martinez could be found guilty.

(Doc. No. 10-1 at Ex. 6.)

In April 2006, the state appellate court affirmed Petitioner's conviction, but vacated his sentence and remanded to the trial court for resentencing on the basis of the Ohio Supreme Court's decision in *State v. Foster*, 845 N.E.2d 470, 109 Ohio St.3d 1 (Ohio 2006). *Martinez I*, 2012-Ohio-2002 at ¶ 22.  Petitioner did not appeal the state appellate court's decision to the Ohio Supreme Court.

## C.  Resentencing and Motion to Dismiss

The state trial court did not resentence Petitioner for more than five years.[1]  On May 24, 2011, the trial court conducted a resentencing hearing – at which Petitioner was represented by Attorney Rump –  and again imposed concurrent and consecutive sentences totaling 15 years.  (Doc. No. 10-1 at Ex. 12.)  Thereafter, Petitioner moved to dismiss the case, arguing that the five-year delay in resentencing him had deprived the trial court of jurisdiction to do so.  (Doc. No. 10-1 at Ex. 13.)  He also filed a timely notice of appeal from his resentencing in the state appellate court.  (Doc. No. 10-1 at Ex. 19.)

In July 2011, the state trial court judge who had presided over the entirety of

---

[1] There is evidence in the record that, during the period of time after the state appellate court vacated his sentence, Petitioner was in federal custody, pending trial on federal narcotics charges, and that the state trial court made several unsuccessful attempts to return Petitioner to state custody for the purpose of resentencing.  (Doc. No. 10-1 at pp. 170, 200.)  Petitioner's resentencing was apparently not prompted until April 2011, when Petitioner sent the trial court a letter requesting that it resentence him.  (Doc. No. 10-1 at p. 170.)

4

Petitioner's state court criminal proceedings voluntarily recused himself from further proceedings in the case.  (Doc. No. 10-1 at Ex. 16.)  In August 2011, the Ohio Supreme Court assigned Judge Richard Markus, a visiting judge, to preside over the remaining proceedings in Petitioner's case.  (Doc. No. 10-1 at Ex. 17.)  In October 2011, Judge Markus conducted a motion on Petitioner's motion to dismiss.  (October 6, 2011 Transcript ("Oct. 2011 Tr.") at 5, Doc. No. 9-2.)  During the hearing, Judge Markus hypothesized that the original trial judge had recused himself because the original judge was "concerned that [he] might be a witness in [the] hearing relating to the motion for dismissal."  (*Id*. at 6.)  Petitioner, through Attorney Rump, requested that Judge Markus resentence Petitioner on the basis that, at the time of resentencing in May 2011, the trial court lacked jurisdiction due to the delay in resentencing.  (*Id*. at 19-20.)  Judge Markus declined to resentence Petitioner a second time, reasoning that, if the trial court lacked jurisdiction in May 2011, it still lacked jurisdiction, and "I should be determining whether there is or is not a basis for the defendant's discharge for lack of jurisdiction over the case generally."  (*Id*. at 20-21.)  Thereafter, Judge Markus concluded that the trial court had jurisdiction to resentence Petitioner in April 2011:

> I agree with you that the record is not clear as to why [the original judge] recused himself.  I inferred what I just said as to that, but it really makes no difference because he clearly had jurisdiction until he recused himself.  Whatever jurisdiction the court had, he had the authority, whatever it was, at the time that he acted.  If the court had jurisdiction he was an instrumentality of the court at that time.

(*Id*. at 21.)

During the hearing, Attorney Rump argued that the delay in resentencing Petitioner had caused Petitioner prejudice, specifically asserting that, "because the

5

case was never resentenced during those ensuing years, the difficulty becomes that [Petitioner] doesn't have timely access to the Ohio Supreme Court, nor does he have timely access to the federal habeas." (Oct. 2011 Tr. at 28.)  Attorney Rump argued that the time for Petitioner to seek further direct review of his conviction had lapsed while he was awaiting resentencing and, thus, Petitioner was prejudiced by losing his ability to seek review of the April 2006 appellate court decision in the Ohio Supreme Court:

> Some of the dicta in some of the cases have held that part of the evaluation of a court in determining whether or not there is subject matter jurisdiction, or whether the court should dismiss for lack, is of course whether any harm or potential harm has inured to a defendant by being incarcerated for an extended period of time; in [Petitioner's] case, a period of years.
>
> This has precluded [Petitioner], obviously, from proceeding further with his appeals because as long as the resentencing is pending, as long as the case was remanded to the trial court, he can't do anything further with it until the trial court has further proceedings and it was remanded and reversed.

(*Id*. at 32-33.)  Judge Markus questioned Attorney Rump's reasoning:

> Judge:      I'm not sure I follow you.  Is it your argument that when the Court of Appeals affirmed his conviction, but directed that there be a remand for resentencing, that precluded a request for review by the Supreme Court?
>
> Rump:       He was reversed and remanded on the sentencing which was a large issue in the case.
>
> *   *   *
>
> Judge:      [I]s it your contention that the order[] that reversed the sentencing precluded an appeal on his conviction?
>
> Rump:       It can depend, Your Honor, on the

6

resentencing if the resentencing is gonna be part of it.  Most attorneys would –

Judge:     I'm having trouble.  Maybe I'm not asking the question properly.  In April of 2006 the Court of Appeals made a decision.  Are you saying that there is no right to seek Supreme Court review of that decision until the trial court does something?

Rump:     I'm trying to answer your question as best I can, and the best question I can offer is my recollection was that it was reversed and remanded for proceedings on the resentencing.

Judge:     Suppose that's wrong . . . Suppose it should not have been affirmed but should have been reversed on the merits of the conviction; can't he challenge that then?

Judge:     Your Honor, you can always file a memorandum in support of jurisdiction.  And yes, you can always challenge it.  But I don't know in that particular case what he would have challenged.  As this Court is aware, there are limitations in terms of how long he has to get into Federal Habeas.  So if he filed in the Ohio Supreme Court they could have determined that it was premature because the sentencing packet part . . . was not before the [Ohio Supreme Court] because the Third District Court of Appeals sent the case back down to this court.  And that's why the burden is on the courts to make sure that the lower court complies with the mandate of the higher court.

Judge:     But your argument as I understand it is that the failure to resentence somehow precluded his ability to seek either Supreme Court review of habeas corpus, and I'm having difficulty saying why it precluded it.

*   *   *

7

| | |
|---|---|
| Judge: | And my understanding was you're saying that his ability to challenge that decision was impaired by the delayed resentencing.  And I'm having difficulty understanding why the delayed resentencing had any affect at all. |

(*Id*. at 32-35, 38, 42.)  Finally, Rump argued that "whether or not [Petitioner] sought further appeal within the 45 days on the affirmation of the convictions is – is a separate issue that's really not one that we're worried about right now." (*Id* at 43.)

Judge Markus also questioned Attorney Rump regarding how she had advised Petitioner with respect to his ability to seek review of the April 2006 appellate court decision in the Ohio Supreme Court:

| | |
|---|---|
| Judge: | So you knew . . . shortly after April 24, 2006 that the appeals court had remanded the case for resentencing. |
| Rump: | Correct.  And then trial counsel then, or whoever would have represented him in the trial court, he would have new counsel appointed for the resentecning. |
| Judge: | But I just wanna make sure that I understand your knowledge, you knew when the Court of Appeals made its decision what its decision was? |
| Rump: | Correct.  We're served with a copy of it. |
| | * * * |
| Judge: | [A]fter the Court of Appeals made its decision on April 24, 2006, are you saying that you did not have any responsibility to your client to give advice relating to the possible review of that decision |
| Rump: | No.  The only thing that we do, the only thing |

8

that we are required to do, and which we do . . . is that you advise them of the decision, that they have –

Judge:    Stop. So you do have to advise him of the decision.

Rump:    I do.

Judge:    Yes.

Rump:    That's my personal choice.

\* \* \*

Judge:    All right. So when you received this decision you mailed it to Mr. Martinez in the Marion Correctional Facility with some further advise?

Rump:    Well, that he has 45 days to seek further appeal.

Judge:    That's advice to me.

Rump:    Oh, yeah. Yeah. Yeah. Yes. Yes, I do that because they don't have anymore right to appointed counsel and I believe it – I have to tell them what the next opportunity may be.

\* \* \*

Judge:    Did you, at that time, indicate to him that if he wished to pursue an appeal he would have further counsel or he could seek further counsel?

Rump:    What I tell my clients is that you no longer have the right to appointed counsel. If you wish to seek further appeal with the Ohio Supreme Court you will either need to represent yourself or see if family or friends can't obtain counsel to retain counsel for you.

Judge:    All right. So you give him some explanation as to the procedure?

9

          Rump:          Correct.

(*Id*. at 28-31.)

In October 2011, Judge Markus  denied the motion to dismiss.  (Doc. No. 10-1 at Ex. 18.)  In November 2011, Petitioner filed a timely notice of appeal from the order denying the motion to dismiss.  (Doc. No. 10-1 at Ex. 22.)  Thereafter, the state appellate court consolidated that appeal with Petitioner's appeal from his resentencing. (Doc. No. 10-1 at Ex. 23.)

In his appellate court brief challenging his resentencing and the trial court's order denying his motion to dismiss, Petitioner asserted the following assignments of error:

I.       The trial court abused its discretion and imposed a cruel and unusual punishment by sentencing Martinez to 15 years in prison for 3 counts of possession. Martinez had no prior arrests or convictions, had a history of employment, was not violent, did not use a firearm, and had no addiction or mental health issues.

II.      In 2006, this Court reversed Martinez's sentence as unconstitutional.  It did not review his sentence on the merits in light of this.  Despite this mandate, Martinez was not resentenced until more than 5 years later after he wrote to the trial court inquiring as to why he had not been resentenced.  Martinez's rights pursuant to the Sixth Amendment of the U.S. Constitution and [Ohio] Crim. R. 32(A)(1) were violated, and the lower court abused its discretion when it denied his motion to dismiss and would not vacate the remainder of his sentence.

III.     The trial court (through a visiting judge) abused its discretion when, after the resentencing judge abruptly recused himself for an unspecified conflict of interest, [the visiting judge] would not review the resentencing. This also violated Martinez's right to due process of law as guaranteed by the 14th Amendment of the U.S. Constitution.  At a minimum, the trial court should have made findings of fact as to the basis for

the recusal and whether the conflict of interest
impacted the May 24, 2011 resentencing.

(Doc. No. 10-1 at Ex. 24.)  In August 2012, the state appellate court affirmed

Petitioner's sentence and the trial court's denial of the motion to dismiss.  *State v.*

*Martinez*, Nos. 13-11-32, 13-11-21, 2012-Ohio-3750 (Ohio App. Ct. Aug. 20, 2012)

("*Martinez II*").

In October 2012, Petitioner, *pro se*, filed a notice of appeal and a memorandum

in support of jurisdiction in the Ohio Supreme Court.  (Doc. No. 10-1 at Exs. 28, 29.)

He raised the following propositions of law:

> I.  Appellate courts have the authority to review a trial
> court's sentence for alleged errors of law or
> procedure that stem from the trial court judge's
> recusal, or bias, or conflicts of interest, or
> alternatively, the Supreme Court of Ohio must review
> such claims.
>
> II.  Constitutional due process, the right to an impartial
> judge, and fundamental fairness requires
> resentencing after a trial judge recuses himself and
> admits a conflict of interest.
>
> III.  Five years of unreasonable delay in resentencing
> Martinez following remand divested the court of
> subject matter jurisdiction.
>
> IV.  A sentencing court abuses its discretion by not
> properly weighing mitigating sentencing factors under
> [Ohio Rev. Code §] 2929.11.

(Doc. No. 10-1 at Ex. 29.)  In January 2013, the Ohio Supreme Court declined

jurisdiction and dismissed Petitioner's appeal.  *State v. Martinez*, 981 N.E.2d 886

(Table), 134 Ohio St.3d 1420 (Ohio 2013).

**C.     Rule 26(B) Application for Reopening**

In November 2012, while his appeal was pending in the Ohio Supreme Court,

Petitioner, *pro se*, filed an application to reopen his appeal pursuant to Rule 26(B) of

Ohio's Rules of Appellate Procedure.  (Doc. No. 10-1 at Ex. 32.)  He alleged that his

appellate counsel had provided ineffective assistance on direct appeal because:

> I.      Appellant's counsel . . . failed to raise the meritorious
> assignment of error that he was erroneously
> convicted of "Allied Offenses" pursuant to [Ohio Rev.
> Code §] 2941.25, because both counts two and three
> charge possession of two separate amounts of
> marijuana.
>
> II.     Appellant's counsel . . . could not argue her own
> ineffectiveness and conflict of interest in prior
> proceedings for failing to raise this meritorious "Allied
> Offenses" claim.
>
> III.    Appellant's counsel . . . could not argue her own
> ineffectiveness and conflict of interest in prior
> proceedings regarding five years of delay between
> appellate remand and resentencing.

(*Id*.)  With respect to this third ground for relief, Petitioner asserted that Rump was

ineffective in failing to properly advise him of "his right to further state and federal

review of his convictions."  (Doc. No. 10-1 at 443.)

In December 2012, while Petitioner's appeal in the Ohio Supreme Court was still

pending, the state appellate court denied his Rule 26(B) Application for lack of

jurisdiction.  (Doc. No. 10-1 at Ex. 35.)  The court stated that, under then-Rule 2.2(D)(1)

of the Ohio Supreme Court Rules of Practice, the appellate court was divested of

jurisdiction over the matter when Petitioner filed his notice of appeal in the Ohio

Supreme Court.  (*Id*.)  Petitioner filed a notice of appeal and memorandum in support of

12

jurisdiction in the Ohio Supreme Court.  (Doc. No. 10-1 at Exs. 36, 37.)  He asserted a

single proposition of law:

> The filing of a notice of appeal to the Ohio Supreme Court
> does not divest the Court of Appeals of jurisdiction to hear a
> collateral application under App. R. 26(B) claiming
> ineffective assistance of appellate counsel.

(Doc. NO. 10-1 at Ex. 37.)  In March 2013, the Ohio Supreme Court declined

jurisdiction. *State v. Martinez*, 984 N.E.2d 31 (Table), 2013-Ohio-902 (Ohio 2013).

### III. Proceedings in This Court

**A.     Habeas Petition**

In January 2014, Petitioner filed his habeas petition in this Court.  (Doc. No. 1.)

He asserts the following grounds for relief:

> I.     Martinez was denied due process of law under the
> Fourteenth Amendment because the state court of
> appeals was wrong, unreasonable and at fault for
> denying Martinez access to the post-conviction
> process of fact development, factual findings and a
> ruling on the merits of his properly raised claim of
> ineffective assistance of appellate counsel pursuant
> to Ohio's App. R. 26(B), entitling Martinez to non-
> deferential *de novo* federal habeas fact development,
> fact finding and ruling on the merits, or alternatively,
> the writ must be granted directing the State to
> conduct such due process proceedings or discharge
> Martinez.

> II.    Martinez was denied effective assistance of counsel
> on appeal in violation of his Sixth and Fourteenth
> Amendment constitutional rights. . . Martinez was
> deprived of effective assistance of counsel on appeal
> because:

> (A) Appellate Counsel failed to raise the meritorious
> claim that Martinez's convictions and sentences
> cannot be entered for both counts two and three,

13

which charge possession of two separate amounts of marijuana, pursuant to Ohio's Allied Offenses statute ([Ohio Revised Code] 2941.25) and the Double Jeopardy protections of the Fifth Amendment;

(B) Appellate Counsel could not argue her own ineffectiveness and conflicts of interest for failing to raise the allied offenses and Double Jeopardy claims in prior proceedings; and

(C) Appellate Counsel could not argue her own ineffectiveness and conflicts of interest regarding five years of delay between the *Martinez I* appellate remand and resentencing.

III.     Martinez was denied his constitutional right to a speedy trial due to over five years of delay between remand and resentencing.

IV.     The Ohio court of appeals was wrong, unreasonable and at fault for refusing to rule on Martinez's properly raised claim that he was denied an impartial or unconflicted [*sic*] judge at resentencing, in violation of due process under the Fourteenth Amendment.

V.     Constitutional due process, the right to an impartial judge and fundamental fairness requires [*sic*] resentencing after a trial judge recuses himself and admits a conflict of interest under the Sixth and Fourteenth Amendments.

VI.     The trial court's fifteen year sentence is cruel and unusual and denies due process because it failed to consider mitigating sentencing factors in violation of the Eighth and Fourteenth Amendments.

(*Id*.)  With respect to his second ground for relief, Petitioner asserts that he was

deprived of the effective assistance of appellate counsel when Attorney Rump failed to

advise him "that he must appeal to the Ohio Supreme Court in order to seek further

review after his conviction was affirmed in *Martinez I*.  Nor did [A]ttorney Rump advise

Martinez that such an Ohio Supreme Court appeal was required in order to seek direct

14

review in the United States Supreme Court, and as a prerequisite to federal habeas corpus procedures." (*Id*. at 24-25.)

## B.    Appointment of Counsel and Evidentiary Hearing

In March 2015, the Court appointed Petitioner counsel for the purpose of an evidentiary hearing in this case. (Doc. No. 18.)  In the Order, the Court noted that it was not clear from the record whether and to what it extent Attorney Rump advised Petitioner regarding his opportunity to appeal to the Ohio Supreme Court following the April 2006 appellate court decision affirming his conviction. (*Id*.)[2]

In June 2015, after conferring with counsel for both parties, the Court conducted an evidentiary hearing, discussed in relevant part below. (June 2015 Hearing Transcript ("June 2015 Tr."), Doc. No. 32.)  Thereafter, the parties submitted post-

---

[2] The decision to appoint Petitioner counsel arose after review of the record in this matter revealed that, as discussed in Section IV(B)(1)(b), *infra*, Petitioner's claims of ineffective assistance of counsel are subject to *de novo* review because the state court erred when it relied on a procedural rule to decline to consider those claims. Petitioner asserts that Rump's ineffective assistance at the appellate court level precluded him from obtaining review of his direct appeal claims in the Ohio Supreme Court. These claims included Fourth Amendment challenges to the search warrant that authorized the search of his home and to the introduction of evidence obtained during the search of his vehicle. The state appellate court determined that the stop of Petitioner's vehicle and the subsequent search of his cell phone "arguably violated" his Fourth Amendment rights, but concluded that Petitioner suffered no prejudice because no charges arose out of the stop of the vehicle and the search of the cell phone. *Martinez I*, 2012-Ohio-2002 at ¶¶ 8-12. While Petitioner could not assert these Fourth Amendment claims as independent grounds for relief on federal habeas, *see Stone v. Powell*, 428 U.S. 465, 495 (1976), in this case, he asserts that Rump's ineffective assistance deprived him of the ability to seek further review of these claims in state court.  Given that Petitioner's ineffective assistance of appellate counsel claims are subject to *de novo* review, and that the appellate court found a Fourth Amendment violation with respect to one of Petitioner's direct appeal claims, the magistrate judge determined that it was in the interest of justice to appoint Petitioner counsel for the purpose of determining whether, and to what extent, Rump properly advised Petitioner regarding his ability to seek review in the Ohio Supreme Court.

15

hearing briefs, and, after obtaining leave to do so, Petitioner submitted a *pro se* brief. (Doc. Nos. 33, 36, 42, 43, 44.)

**IV. Procedural Issues**

**A.     Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The Court of Common Pleas of Seneca County, Ohio sentenced Petitioner.  (Doc. No. 10-1 at Ex. 12.)  Seneca County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(b). Accordingly, this Court has jurisdiction over Petitioner's petition.


**B.     Exhaustion and Procedural Default**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition.  *See* *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See* *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  Fair presentment of a claim in a federal constitutional context requires a

16

petitioner to apprise the state courts that his claim is a federal claim, rather than "merely . . . an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Similarly, a federal court may not review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow

17

> the procedural rule and that he was actually prejudiced by
> the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

In this case, the State asserts a procedural argument with respect to each of Petitioner's ground for relief.

### 1. Grounds One and Two: Denial of Rule 26(B) Application and Ineffective Assistance of Appellate Counsel

The State contends that Petitioner's first and second grounds for relief are procedurally barred, and that his first ground for relief is not cognizable on habeas review.  In his first ground for relief, Petitioner argues that the state courts violated his constitutional rights when they determined that the state appellate court lacked jurisdiction to consider Petitioner's Rule 26(B) Application.  In his second ground for relief, Petitioner asserts the ineffective assistance of appellate counsel arguments that he attempted to raise in his Rule 26(B) Application.

#### a. Ground One: Denial of Rule 26(B) Application

The State is correct that Petitioner's first ground for relief is not cognizable on habeas review.[3]  It is well established that "errors in post-conviction proceedings are

---

[3] In its argument that Petitioner's first ground for relief is procedurally defaulted, the State conflates Petitioner's first and second grounds for relief, arguing that Petitioner procedurally defaulted his first ground by failing to properly raise it in the state courts.  In his first ground for relief, however, Petitioner challenges the state courts' conclusion that they lacked jurisdiction to consider his Rule 26(B) Application.  He asserted this ground for relief to the Ohio Supreme Court.  (Doc. No. 10-1 at Ex. 37.)  In his second ground for relief, Petitioner reiterates the ineffective assistance claims that were contained in his Rule 26(B) Application.  The state courts relied on their alleged lack of jurisdiction as a basis for declining to consider the Rule 26(B) Application.  So, in other words, Petitioner's first ground for relief challenges the procedural reasoning that precluded the state courts from reviewing his claims of ineffective assistance of appellate counsel.  Because Petitioner asserted his first ground for relief to the Ohio Supreme Court, it is neither unexhausted nor

18

outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).  This is "because 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Id.* (quoting *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986)).  Challenges to post-conviction proceedings "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby*, 794 F.2d at 247.  Accordingly, such claims cannot be brought under § 2254.  *Id.* at 246.

In his first ground for relief, Petitioner contends that the state courts erred when they determined that the state appellate court lacked jurisdiction to consider his Rule 26(B) Application.  Specifically, he asserts that they relied on outdated law to conclude that, by filing a notice of appeal in the Ohio Supreme Court, Petitioner divested the appellate court of jurisdiction to consider the application.  The Sixth Circuit has determined that an application under Rule 26(B) "is part of the collateral, postconviction process rather than direct review." *Lopez v. Wilson*, 426 F.3d 339, 351 (6th Cir. 2005) (*en banc*).  Accordingly, Petitioner's first ground for relief, challenging the procedural determinations of the appellate court, is not cognizable on habeas review.  *See Collins v. Shewalter*, No. 1:09-CV-2427, 2010 WL 3604656, *4 (N.D. Ohio Sept. 9, 2010) (Gaughan, J.) (citing *Adkins v.Conteh*, No. 3:05-CV-2978, 2007 WL 461292, **3-4 (N.D. Ohio Feb. 7, 2007) (Zouhary, J.) ("Because a Rule 26(B) application is a collateral proceedings, allegations of deficiency in this process are not cognizable on federal

procedurally barred.

19

habeas corpus review.")).

### b.     Ground Two: Ineffective Assistance of Appellate Counsel

With respect to Petitioner's second ground for relief, the State argues that, because Petitioner divested the state appellate court of jurisdiction to consider his Rule 26(B) Application by filing a notice of appeal to the Ohio Supreme Court, the ineffective assistance of counsel claims asserted in the Rule 26(B) Application – and reiterated in the second ground for relief in his habeas petition – are procedurally barred.  This argument lacks merit, as review of Ohio law at the time of the appellate court decision reveals that the state courts erred in determining that the appellate court lacked jurisdiction in this case.

In its December 2012 decision declining to review Petitioner's Rule 26(B) Application, the state appellate court relied on *State v. Wogenstahl*, 662 N.E.2d 16, 75 Ohio St.3d 273 (Ohio 1996).  (Doc. No. 10-1 at Ex. 35.)  In *Wogenstahl*, decided on March 6, 1996, the Ohio Supreme Court concluded that, under then-Rule II(2)(D)(1) of its Rules of Practice, the filing of a notice of appeal in the Ohio Supreme Court divested a state appellate court of jurisdiction over a defendant's Rule 26(B) application:

> The determinative question before this court is whether the court of appeals erred in dismissing appellant's application to reopen for lack of jurisdiction. S.Ct.Prac.R. II(2)(D)(1) states: "After an appeal is perfected from a court of appeals to the Supreme Court, the court of appeals is divested of jurisdiction, except to take action in aid of the appeal, *to rule on an application for reconsideration filed with the court of appeals pursuant to Rule 26* of the Rules of Appellate Procedure, or to rule on a motion to certify a conflict under Article IV, Section 3(B)(4) of the Ohio Constitution."
>
> Under the clear language of the foregoing rule, appellant's

20

> notice of appeal to this court divested the court of appeals of
> jurisdiction to rule upon his application to reopen.
> Accordingly, the court of appeals properly dismissed
> appellant's application.

*Wongenstahl*, 662 N.E.2d at 17, 75 Ohio St.3d at 274 (emphasis added).  The decision

in *Wogenstahl*, however, noted that, effective April 1, 1996, Rule II(2)(D)(1) would be

amended to read: "After an appeal is perfected from a court of appeals to the Supreme

Court, the court of appeals is divested of jurisdiction, except to take action in aid of the

appeal, *to rule on application timely filed with the court of appeals pursuant to App. R.

26*, or to rule on a motion to certify a conflict." 662 N.E.2d at 17, n.1, 75 Ohio St.3d at

274, n.1 (emphasis added).  In other words, the amended version of Rule II(2)(D)(1) did

not limit an appellate court's continuing jurisdiction only to motions for reconsideration,

which are filed under Ohio Appellate Rule 26(A).  Rather, the amended version of Rule

II(2)(D)(1) permitted an appellate court to consider properly filed applications to reopen

filed pursuant to Ohio Appellate. Rule 26(B).[4]

    Since the decision in *Wogenstahl*, the Ohio Supreme Court has observed that its

---

[4] The decision in *Wogenstahl* is the product of the timing of that case.  Prior to July 1993, under Ohio law, claims of ineffective assistance of appellate counsel were not cognizable on collateral review.  *State v. Murnahan*, 584 N.E.2d 1204, 1208-09, 63 Ohio St.3d 60, 65 (Ohio 1992).  Rather, the required method for asserting such claims was in an application for delayed reconsideration under Ohio App. R. 26(A), or on direct appeal to the Ohio Supreme Court.  584 N.E.2d at 1209, 63 Ohio St.3d at 65.  Applications to reopen for the purpose of asserting ineffective assistance of appellate counsel did not exist in Ohio until July 1993, when the Ohio legislature amended Rule 26(B) to "create[] an 'Application for Reopening' to raise ineffective assistance of appellate counsel claims in the court of appeals." *Wogenstahl*, 662 N.E.2d at 17, 75 Ohio St.3d at 275.  Accordingly, at the time of the decision in *Wogenstahl*, Appellate Rule 26(B) permitted the filing of an application to reopen, but Rule II(2)(D)(1) of the Rules of Practice had not yet been amended to account for the new method of asserting claims of ineffective assistance of appellate counsel.

21

Rules of Practice "recognize the appellate court's role in App. R. 26(B) matters, allowing the lower courts to consider App. R. 26(B) applications even after an appeal to [the Ohio Supreme Court] is perfected."  *State v. Davis*, 894 N.E.2d 1221, 1225, 119 Ohio St.3d 422, 427 (Ohio 2008).  Rule II(2)(D(1) was renumbered to Rule 7.01(D)(1) in 2013, but otherwise remains unchanged from the version effective April 1, 1996.  The language of the rule in effect in December 2012 permitted the court of appeals to consider Petitioner's Rule 26(B) Application, despite the fact that he had filed a notice of appeal to the Ohio Supreme Court.  Accordingly, the state the appellate court misapplied Ohio law when it determined that it lacked jurisdiction to consider Petitioner's Rule 26(B) Application.[5]  Because, in this case, the state court's "reliance upon its own rule of procedural default is misplaced," this Court should be "reluctant to conclude categorically that federal habeas review of the procedurally defaulted claim is precluded."  *Greer v. Mitchell*, 364 F.3d 663, 675 (6th Cir. 2001); *see also* *Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005) (concluding that the district court had properly reviewed the petitioner's ineffective assistance claim *de novo* where the state court had incorrectly determined that the claim was barred by *res judicata*).  Thus, the merits of Petitioner's second ground for relief shall be reviewed *de novo*.

---

[5] In its Return of Writ, the State argues that the appellate court properly relied on *Wogenstahl* to decline to review Petitioner's Rule 26(B) Application because Petitioner failed to file his application within 90 days of the journalization of the appellate court decision in his case.  (Doc. No. 10 at 26.)  This argument lacks merit.  Review of the December 2012 decision of the state appellate court reveals that the court did not consider the timeliness of Petitioner's application in deciding that it lacked jurisdiction.  Further, the decision in *Wogenstahl* does not discuss the timeliness of the application in that case. The record provides no explanation for the state appellate court's decision to apply outdated case law in this matter, except that the State relied on *Wogenstahl* in opposing Petitioner's Rule 26(B) Application.

### 2.    Ground Three: Speedy Trial

In his third ground for relief, Petitioner argues that the five-year delay between the appellate court decision remanding his case for resentencing and the hearing at which he was resentenced violated his right to a speedy trial.  The State argues that, to the extent that Petitioner relies on Rule 32 of Ohio's Rules of Criminal Procedure, his claim is not cognizable on habeas.[6]  Although it is correct that a claim arising out of a state criminal rule would likely not be cognizable on habeas, *see* Estelle v. McGuire, 502 U.s. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."), the record reveals that Petitioner asserted this claim in the context of the Sixth Amendment at all levels of state court review.  Accordingly, this claim is cognizable as a federal constitutional claim on habeas review.

### 3.    Grounds Four and Five: Judicial Bias

Petitioner's fourth and fifth grounds for relief arise out of his contention that the original trial court judge was biased against him when the judge imposed Petitioner's sentence on resentencing.  In his fourth ground for relief, Petitioner argues that the state appellate court violated his constitutional rights when it declined to review his claim of judicial bias.  In his fifth ground for relief, Petitioner contends that the visiting judge violated his right to due process when the visiting judge failed to resentence him after

---

[6] Ohio Criminal Rule 32(A) provides that "[s]entence shall be imposed without unnecessary delay."

the original judge's recusal.[7] In its decision affirming his resentencing, the state appellate court concluded as follows with respect to these issues:

> Martinez does not offer any authority for his argument that [the visiting judge] should have resentenced him after [the original judge's] recusal, or that [the visiting judge] should have determined the reason for the recusal. Furthermore, Martinez did not raise any issues of bias or concerns of a conflict at the resentencing hearing, when [the original judge] resentenced Martinez to the same term of imprisonment originally imposed. This Court declines to inquire into matters of judicial discretion regarding voluntary recusal or to require a visiting judge to conduct such an inquiry. The determination of whether a common pleas judge is biased is within the exclusive jurisdiction of the Supreme Court of Ohio.

*Martinez II*, 2012-Ohio-3750, ¶ 28.

The State argues that each of these grounds for relief is unexhausted and procedurally defaulted because, in his state court proceedings, Petitioner failed to state his claims in the context of federal constitutional law and, thus, failed to properly present them to the state courts. The State is correct with respect to Petitioner's fourth ground for relief.

In the heading of his fourth ground for relief, Petitioner contends that the appellate court's decision not to review his claim of judicial bias violated his constitutional rights under the Fourteenth Amendment. His argument relies solely on Ohio law, as he insists that the state appellate court erroneously concluded that it could not review his claims of bias. He points to Ohio case law holding that an appellate court

---

[7] Throughout his pleadings in this case, Petitioner repeatedly insists that the original trial court judge admitted that he had a conflict of interest or bias in Petitioner's case. Petitioner does not, however, cite to any evidence of any such admission – or even to evidence of bias or a conflict – in the record.

may "review the trial court's rulings for alleged errors of law or procedure that may stem from bias or other conflicts of interest." *State v. Ludt*, 906 N.E.2d 1182, 1187, 180 Ohio App.3d 672, 679 (Ohio App. Ct. 2009). He does not cite to a single federal case. Nor did he do so in his Ohio Supreme Court memorandum in support of jurisdiction regarding this issue. In other words, in his fourth ground for relief, Petitioner contends that the state appellate court erred, under Ohio law, when it declined to consider his claims of bias. The state appellate court relied on Ohio law in resolving this issue. In sum, Petitioner failed to apprise the state courts that his claim was a federal claim, and the state appellate court treated the claim as one arising solely under Ohio law. Accordingly, Petitioner did not exhaust his fourth ground for relief.

Further, there is no method by which Petitioner could now present the constitutional nature of this claim to the Ohio courts. Petitioner could have asserted this claim in the constitutional context in his direct appeal from his resentencing. He failed to do so and, under Ohio law, *res judicata* now prohibits him from raising the issue in any post-conviction proceeding. *See State v. Cole*, 443 N.E.2d 169, 171, 2 Ohio St.3d 112, 113 (Ohio 1982); *State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal). The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas." *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003). Because Petitioner can no longer raise this claim in state court, it is procedurally defaulted.

Unlike his fourth ground for relief, however, Petitioner stated his fifth ground for relief – that the visiting judge violated Petitioner's right to due process when the visiting judge failed to resentence Petitioner after the original judge recused himself – in federal constitutional terms at all levels of review in the state courts. The state appellate court addressed the issue on the merits, rather than asserting a procedural basis for declining to review the claim. Accordingly, Petitioner properly exhausted his fifth ground for relief.

### 4. Ground Six: Cruel and Unusual Punishment

In his sixth ground for relief, Petitioner argues that his fifteen year sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. Review of the relevant documents in the record reveals that Petitioner did not assert this claim in the context of his federal constitutional rights at any point in the state courts. The heading of his state court appellate brief references the Eighth Amendment. The argument contained in the brief, however, relies solely on Ohio law regarding the imposition of a sentence in a criminal case. (Doc. No. 10-1 at Ex. 24.) Petitioner's memorandum in support of jurisdiction does not reference any federal constitutional law. The Sixth Circuit has concluded that "bare and isolated citation[s]" to a constitutional right are not sufficient to adequately present the federal nature of a claim to a state court. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006). Accordingly, Petitioner failed to fairly present the constitutional nature of his claim to the state courts, and it is not exhausted.

Further, there is no method by which Petitioner could now present the constitutional nature of this claim to the Ohio courts. Petitioner could have asserted this claim in the constitutional context in his direct appeal from his resentencing. Because

26

he failed to do so, *res judicata*, an independent and adequate state procedural ground, Mason, 320 F.3d at 628, now prohibits him from raising the issue in any post-conviction proceeding, Cole, 443 N.E.2d at 171, 2 Ohio St.3d at 113; Perry, 226 N.E.2d 104, 10 Ohio St.2d 175.  Because Petitioner can no longer raise this claim in state court, it is procedurally defaulted.

### 5.      Summary of Exhaustion and Procedural Default

In sum, Petitioner's first ground for relief is not cognizable on federal habeas review.  He failed to properly exhaust his fourth and sixth grounds for relief because he failed to adequately present the constitutional nature of his claims.  Further, because Petitioner can no longer assert these claims in state court, his fourth and sixth grounds for relief are procedurally defaulted.  Accordingly, the first, fourth and sixth grounds for relief are subject to dismissal with prejudice.  Petitioner's second, third and fifth grounds for relief shall be reviewed on the merits.

### V. The Merits of Petitioner's Remaining Claims

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Generally, where a state court has reviewed a ground for relief, a writ of habeas corpus

may issue only if the state court's decision is contrary to clearly established federal law

or was based on an unreasonable determination of the facts in light of the evidence.

*See* *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90

(2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta,

and the law must be clearly established at the time of the petitioner's conviction.  *See*

*Carey,* 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of

federal law only if the deciding court correctly identifies the legal principle at issue and

unreasonably applies it to the facts of the case at hand.  *See* *Wiggins v. Smith*, 539

U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of

[Supreme Court] precedent 'unreasonable,' the state court's decision must have been

more than incorrect or erroneous.  The state court's application must have been

28

objectively unreasonable." *Id.* at 520-21 (internal citations and quotation marks omitted).

By its own terms, however, AEDPA's standard of review is applicable only to claims "adjudicated on the merits in state court." Where a state court failed to consider the merits of a properly raised claim, however, "the deference due under AEDPA does not apply." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). Rather, where no state court has considered the merits of the claim, "this court reviews questions of law and mixed questions of law and fact *de novo*." *Id*. Here, as discussed in Section IV(B)(1)(b), *supra*, the state appellate court erred when it declined to consider the claims of ineffective assistance of counsel raised in Petitioner's Rule 26(B) motion. Petitioner reiterates those claims in his second ground for relief. Because the state courts did not adjudicate Petitioner's ineffective assistance of appellate counsel claims on the merits, this Court reviews his second ground for relief *de novo*. The state courts reviewed the claims set forth in his third and fifth grounds for relief on the merits. Accordingly, this Court applies AEDPA's deferential standard of review to those grounds for relief.

**A.     Second Ground for Relief: Ineffective Assistance of Appellate Counsel**

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was
> so defective as to require reversal of a conviction or death

29

> sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  This standard applies "regardless of whether a [p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

In his second ground for relief, Petitioner argues that he received ineffective assistance of counsel on direct appeal.  His petition asserts that he received ineffective assistance of appellate counsel when Rump failed to: (1) raise, on direct appeal, a claim that the trial court erred in imposing separate sentences on Counts Two and Three; and (2) properly advise Petitioner regarding the necessity of, and procedure for, seeking review of the state appellate court's April 2006 decision in the Ohio Supreme Court. (Doc. No. 1.)

### 1.    Allied Offenses/Double Jeopardy

Petitioner argues that Attorney Rump was ineffective in failing to argue, in his first direct appeal, that the trial court violated both Petitioner's right to be free from double jeopardy and Ohio's allied offense statute when it imposed separate sentences on Counts Two and Three in the indictment because those counts both alleged possession of marijuana.  (Doc. No. 1 at 20.)  This argument lacks merit.

As a preliminary matter, the record demonstrates that, assuming the trial court erred in imposing separate sentences on Counts Two and Three, it was the result of error invited by Petitioner's trial counsel.  At Petitioner's original sentencing hearing, trial counsel argued as follows with respect to Counts Two and Three:

> Your Honor, we would state that we believe that Counts Two and Three, the counts dealing with the marijuana, are allied offenses of similar import and that the Court should sentence the defendant to a concurrent sentence for those two crimes; that is, the State has carved out some of the marijuana that was found under this case and tried to make an additional charge . . . against the defendant.
>
> \*   \*   \*
>
> But, Judge, we believe that . . . even though he may have been convicted separately of Counts Two and Three that the Court . . . should not and . . . cannot . . . convict him and sentence him separately on those . . . charges.
>
> So, we are asking the Court run any time concurrently as to Counts . . . Two and Three.

(October 2004 Sentencing Transcript ("Sentencing Tr.") at 34-35, Doc. No. 9-1.)  The prosecutor agreed that it would be appropriate to impose concurrent sentences on Counts Two and Three.  (*Id*. at 38-39.)  Trial counsel's request that the trial court impose concurrent sentences for what he described as allied offense contradicted Ohio law.  Under Ohio's allied offense statute, Ohio Revised Code § 2941.25, if a defendant is convicted of counts alleging allied offenses, the prosecution must choose which count to pursue at sentencing.  *See, e.g., State v. Whitlfield*, 922 N.E.2d 182, 187, 124 Ohio St.3d 323-24 (Ohio 2010).  The trial court then merges the other count into the count selected by the prosecution, and imposes sentence on the count pursued by the prosecution.  *See, e.g., State v. Bayer*, No. 2012 WL 5945118, \*5 (Ohio Ct. App. Nov.

27, 2012).

Here, Petitioner's trial counsel requested that the trial court impose concurrent sentences for Counts Two and Three, rather than requiring the State to elect which of the counts to pursue at sentencing. In other words, assuming Counts Two and Three are allied offenses of similar import, trial counsel invited the error of which Petitioner now complains. Ohio courts recognize the doctrine of "invited error" and apply it to preclude review of invited errors in the context of criminal sentencing:

> The doctrine of invited error holds that a litigant may not take advantage of an error which he himself invited or induced. This court has found invited error when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial judge proposed.

*State v. Campbell*, 738 N.E.2d 1178, 1188, 90 Ohio St.3d 320, 324 (Ohio 2000)

(internal quotation marks and citations omitted). Because trial counsel invited the alleged error at issue in this claim, the state appellate court would have declined to review this argument had Attorney Rump raised it on direct appeal. Moreover, given that trial counsel invited the trial court's alleged error, in order to obtain review of the issue on direct appeal, Rump would have had to raise a claim of ineffective assistance of trial counsel based on trial counsel's request for concurrent sentences. Petitioner does not assert that Rump was ineffective in failing to raise any such claim of ineffective assistance of trial counsel.

Further, Petitioner has not demonstrated that, even absent procedural issues, had Rump raised a claim based on the trial court's imposition of separate sentences on Counts Two and Three, it would have succeeded on the merits. The record

32

demonstrates that, although Counts Two and Three each alleged possession of marijuana, the evidence at trial reflected that the two counts were based on amounts of marijuana discovered in different locations – inside a freezer in Petitioner's home and inside a vehicle parked in Petitioner's driveway. Petitioner points to no Ohio case law holding that, based on facts similar to the facts of this case, the two counts alleged allied offenses of similar import. Research reveals none. Absent Ohio law that supports Petitioner's argument on this point, he cannot demonstrate that any such claim would have succeeded on appeal. Given the procedural and merits-based deficiencies in Petitioner's proposed argument, Petitioner has failed to demonstrate either that Rump was constitutionally deficient in failing to assert this argument, or that he was prejudiced by her failure to do so.

### 2. Failure to Advise Regarding Review in the Ohio Supreme Court

Petitioner also argues that Attorney Rump was ineffective in failing to advise him regarding the necessity of, and procedure for, seeking review of his conviction in the Ohio Supreme Court. Specifically, Petitioner contends that Rump failed to inform him, at the time of the April 2006 state appellate court decision, that he was required to request review in the Ohio Supreme Court within 45 days of the date of that decision, and that failing to do so would preclude further review of the merits of his conviction. According to Petitioner, had he been properly informed, he would have pursued his challenges to the merits of his conviction in the Ohio Supreme Court.

The Sixth Circuit has determined that a defendant's counsel has the obligation to "keep the defendant informed of important developments in the course of the prosecution," including "the resolution of a proceeding in a timely fashion so that the

33

accused retains his control over the decision to appeal." *Smith v. State of Ohio Dep't of Rehab. and Corr.*, 463 F.3d 426, 434 (6th Cir. 2006).  The Sixth Circuit has not determined whether the obligation to advise a defendant of the resolution of a proceeding requires state court direct appeal counsel to advise a defendant regarding the necessary steps for obtaining further review after the resolution of the appellate court case.  It is, however, beyond dispute that providing incorrect advice can constitute constitutionally deficient performance.  *See, e.g., Lafler v. Cooper*, 132 S. Ct. 1376 (2011) (incorrect advice regarding whether to accept or reject a plea agreement constitutes deficient performance).  Accordingly, if Rump provided incorrect advice regarding Petitioner's ability to seek review in the Ohio Supreme Court, that may satisfy the deficient performance prong of *Strickland*.

The state court record is not clear regarding whether, and how, Rump advised Petitioner regarding his ability to seek review in the Ohio Supreme Court.  During the October 2011 state court hearing on Petitioner's motion to dismiss, some of Rump's responses to Judge Markus's questions suggested that she believed that, because the state appellate court had remanded his case for resentencing under *Foster*, Petitioner could not seek review of the merits portion of his conviction in the Ohio Supreme Court until the state trial court resentenced him.  Other responses suggested that she may have advised Petitioner to seek review in the Ohio Supreme Court within the required time period.  Accordingly, this Court appointed counsel for Petitioner and conducted the June 2015 evidentiary hearing to receive evidence Rump's advice to Petitioner with respect to the appellate court's April 2006 decision.

34

During the June 2015 hearing in this Court, Rump testified that, after being appointed to represent a defendant on direct appeal in state court, it was her practice to send that defendant a letter in which she "explain[ed] to the client what a direct appeal is, that it is limited to the record before the Court, that I cannot introduce any new evidence, and that I am only appointed to represent him with respect to that particular appeal." (June 2015 Tr. at 16.)  In the letter, Rump also explained "the Ohio Supreme Court, the 45 days in which they can file [a] further appeal." (*Id*.)  Rump "urge[d]" her clients to "file for everything in state court or they will never be able to be heard on the merits in a federal court." (*Id*.)  Specifically with respect to the Ohio Supreme Court, Rump testified that she explained that "they will have 45 days [from the date of the appellate court decision] in which to file a Memorandum in Support of Jurisdiction, and a Notice of Appeal." (*Id*. at 16-17.)

According to Rump, she sent Petitioner the letter described above at the time that she was appointed to represent him in his direct appeal. (*Id*. at 18.)  She also sent him a second letter, after the state appellate court's April 2006 decision, in which she advised him regarding the next step for review of his conviction, particularly in light of the appellate court's decision to remand his case for resentencing under *Foster*:

> And in that, I explain because there's no final appealable order, it's not primed to go to the Ohio Supreme Court and suggested that once he gets resentenced, that he ask the Court to appoint a new lawyer if necessary to appeal the sentence because . . . I felt it was important for him to have a fresh pair of eyes.

(*Id*. at 18.)  In response to questioning by the Court, Rump testified that, because *Foster* was fairly new law in April 2006, and she was not certain whether a remand under that

case affected the finality of the appellate court's decision with respect to the merits of a

conviction, she also advised Petitioner that he could file a notice of appeal to the Ohio

Supreme Court prior to his resentencing, with the understanding that the "Ohio

Supreme Court isn't going to want to hear it and may not even accept the filing until the

resentencing is completed and everything is all in one packet." (*Id*. at 19; *see also id*. at

40, 42.)  Rump testified that she "did not unequivocally advise [Petitioner] not to

appeal." (*Id*. at 43.)  According to Rump, none of the mail she sent to Petitioner was

ever returned to her.  (*Id*. at 44-45.)

 During the June 2015 hearing, Petitioner testified that he "did not remember

[Rump] every saying I had to appeal to the Ohio Supreme Court or to file a

Memorandum in Support of Jurisdiction immediately to the Ohio Supreme Court." (*Id*. at

54.)  He stated that he was unaware of the 45-day time limit, and that Rump never

advised him of the time requirement for seeking further review. (*Id*. at 56.)  According to

Petitioner, he did not receive any correspondence from Rump advising him of his right

to appeal to the Ohio Supreme Court.  (*Id*. at 57.)  Petitioner acknowledged that,

because he was involved in state and federal criminal proceedings during the time of his

state court direct appeal, he was at one point moved from state custody into federal

custody for 13 months.  (*Id*. at 57.)  He testified, however, that upon his return to state

custody, he went through his accumulated mail and did not see any correspondence

from Rump.  (*Id*.)

 After the hearing, the State submitted copies of Rump's various letters to

Petitioner.  The first letter is dated November 14, 2004. ( Doc. No. 33-2.)  In it, Rump

informed Petitioner that she had been appointed to represent him in his direct appeal.

(*Id*.)  She described the procedure for the direct appeal, as well as the scope of the

arguments she can assert.  (*Id*.)  Finally, she discussed the availability of review in the

Ohio Supreme Court:

> If you do not prevail in the Third District, you may seek
> further leave to appeal to the Ohio Supreme Court.  The
> Ohio Supreme Court is not required to hear criminal appeals
> except in death penalty cases.  You have 45 days after the
> Third District files its decision to ask the Supreme Court to
> hear your case.  (Please do not read this as being negative.
> It is important you fully understand what is going on.)  You
> do *not* have the right to appointed counsel for this step in the
> process.  If it becomes necessary, I will send you additional
> information explaining that step in the process.  It is not
> complicated and the majority of inmates file pro se.  If your
> case is accepted for further appeal, then counsel may be
> appointed.  That is often the Ohio Public Defender's office.
> Their phone number is (800) 686-1573.

(*Id*.)

A second letter is dated April 28, 2006, and advised Petitioner of the state

appellate court's decision affirming his conviction but remanding his case for

resentencing under *Foster*.  (Doc. No. 33-3.)  In the letter, Rump stated as follows:

> If you recall, I mentioned the appeal process to the Ohio
> Supreme Court.  One of the issues unresolved by *Foster* is
> whether you must appeal your convictions at this time or will
> need to wait until the void sentence is addressed.  There is a
> vast difference between a sentence reversed for a minor
> technical correction and one that has been deemed void as
> unconstitutional.  Some defense attorneys and prosecutors
> believe the latter; however, there is no case law to support
> the conclusion.  If you file now and the Ohio Supreme Court
> determines it is premature, they will simply dismiss as such
> and there will be no harm to you.  If you wait until after the
> resentencing and the Court determines it should have been
> filed now, you may have considerable difficulty seeking a
> delayed appeal even though you are pro se.  However, it

37

> would be premature to challenge your sentence because of the remand.  Because my representation of you has ended, it is ultimately your decision.

(*Id*.)[8]

Rump's testimony at the June 2015 evidentiary hearing was consistent with the letters submitted by the parties after the hearing.  Further, her June 2015 hearing testimony that she was uncertain, in April 2006, regarding the effect of the *Foster* remand on Petitioner's ability to seek review in the Ohio Supreme Court is consistent with her responses to Judge Markus's questions during the October 2011 state court hearing.  In sum, Rump's testimony regarding her advice to Petitioner is credible, and

---

[8]In his *pro se* post-hearing brief, Petitioner contends that these letters are forgeries, relying principally on his assertion that these letters are on letterhead containing an address – 1700 Canton, Ste. 2 in Toledo, Ohio – for Attorney Rump that "did not exist" in November 2004 and April 2006.  (Doc. No. 42 at 9.)  In support of his argument, Petitioner provides copies of: (1) correspondence from Rump dated April 2005, bearing a different address – a Post Office box in Holland, Ohio; and (2) a filing in an unrelated appeal, dated May 2006, and bearing the Angola Road address.  (Doc. No. 42-2.)  Petitioner argues that, at the time of the November 2004 and April 2006 letters, Rump's practice was located at the Angola Road address, rather than the Canton address.  He argues that this Court should reopen his evidentiary hearing in order to permit him to cross-examine Rump on this issue.

In response, the State provided an affidavit from Rump, who states that, "[d]uring 2004 through 2006," she used the post office box in Holland as her "business mail address."  (Doc. No. 43-1 at ¶ 2.)  According to the affidavit, in early 2006, Rump moved her office to the Toledo address, and had mail forwarded from the post office box to the Toledo address "until 2011 both to ensure continuity for my clients in case any former client needed to fine me or former clients had referred me to other inmates who were in need of *pro bono* legal services."  (*Id*.)  Rump avers that, during 2004 and 2005, she corresponded with Petitioner using both addresses.  (*Id*. at ¶ 3.)  She denies fabricating the letters.  (*Id*.)

There is no merit to Petitioner's argument that the letters from Rump are forgeries.  The mere fact that correspondence from Rump contains different addresses is not sufficient, on its own, to demonstrate that Rump falsified the letters.  Further, Rump's affidavit sufficiently explains her use of the different addresses.  Accordingly, this Court declines to find that the letters are fabricated and, thus, declines to reopen the evidentiary hearing in this case or to remove Petitioner's appointed counsel and appoint new counsel.

this Court finds that, in April 2006, Rump advised Petitioner as described in her April 28, 2006 letter.

There is no dispute that, as of April 2006, the law regarding the effect of a *Foster* remand on a defendant's ability to appeal to the Ohio Supreme Court was not settled. *Foster* was decided in February 2006.  In that case, the Ohio Supreme Court applied the reasoning of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), to conclude that certain sections and provisions of Ohio's sentencing scheme were unconstitutional.  Among these provisions were former Ohio Rev. Code §§ 2929.14(E) and 2929.41(A), which, together, created a presumption in favor of concurrent terms and required a trial court to make certain factual findings prior to imposing consecutive sentences.  *See Foster*, 845 N.E.2d at 494, 109 Ohio St.3d at 25. In the wake of *Foster*, Ohio appellate courts remanded relevant criminal cases then pending on direct review for resentencing in accordance with the holding of *Foster*.  845 N.E.2d at 499, 109 Ohio St.3d at 31-32.  In its decision, the Ohio Supreme Court did not provide any guidance to the lower courts, or to defendants and their attorneys, regarding how a *Foster* remand from a state appellate court affected a defendant's ability to pursue further review of his conviction in the Ohio Supreme Court.  The issue was not settled as of April 2006 – a mere two months after the decision in *Foster* – when the state appellate court affirmed Petitioner's conviction but remanded his case for resentencing.  Accordingly, Rump's advice to Petitioner in April 2006 – that, given the unsettled state of the law, he may wish to file a notice of appeal and memorandum in support of jurisdiction within the required 45-day

time limit, rather than risk precluding further review in the Ohio Supreme Court – was correct.  Because Rump did not err in advising Petitioner regarding the necessity of, and procedure for obtaining, further review in the Ohio Supreme Court, Petitioner has not demonstrated that Rump's advice was constitutionally deficient.  Accordingly, his claim of ineffective assistance of appellate counsel lacks merit.

**B.     Third Ground for Relief: Speedy Trial**

In his third ground for relief, Petitioner contends that the trial court violated his Sixth Amendment right to a speedy trial when it delayed his resentencing for five years after the remand from the state appellate court.  In its decision affirming Petitioner's re-sentencing, the state appellate court concluded that Petitioner was not prejudiced by the five-year delay between the remand and the re-sentencing because, under Ohio law, "the trial court was required to sentence Martinez to a minimum of eight years imprisonment based on his conviction, thus Martinez could not have been released during the five-year delay." *Martinez II*, 2006-Ohio-3750 at ¶ 25.

The Sixth Circuit has assumed, without deciding, that the Sixth Amendment right to a speedy trial applies in the context of a remand for resentencing.  *See, e.g., United States v. Thomas*, 167 F.3d 299, 303 (6th Cir. 1999).  In *Thomas*, the Sixth Circuit applied the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), to the defendant's claim that the 29-month delay between remand for resentencing and his resentencing violated his Sixth Amendment rights.  In *Barker*, the Supreme Court set forth the following factors to determine whether delay was unconstitutional: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right and

40

(4) whether the defendant was prejudiced by the delay.  407 U.S. at 530.  With respect to prejudice, *Barker* advised courts to consider the interests of the defendant protected by the right to a speedy trial: the prevention of oppressive incarceration; the minimization of anxiety and concern; and the impairment of the defense occasioned by the delay.  *Id.* at 532.  Further, even in cases, such as this one, where the delay is sufficiently lengthy to create a presumption of prejudice, there is no violation where the other factors militate against finding a constitutional violation.  *Thomas*, 167 F.3d at 304 (noting that delays in excess of one-year are presumptively prejudicial, but concluding that the delay in that case – 29 months – did not merit relief because the reason for the delay could not be attributed to the government).

Here, the state appellate court concluded that there was no prejudice to Petitioner because he could not have been released during the five years for which his case was pending on remand.  Petitioner does not address this conclusion in his petition.  Rather, he argues that he was prejudiced by the delay because, as a result of the delay, he was without the effective assistance of counsel and lost his ability to pursue further review in the Ohio Supreme Court.  This argument, however, is merely a reiteration of his claim of ineffective assistance of appellate counsel.  The evidence obtained during the evidentiary hearing on that claim establishes that Petitioner's appellate counsel advised him to pursue further review in the Ohio Supreme Court despite the remand in his case.  It was Petitioner's failure to timely pursue further review – not the five-year delay – that deprived him of the ability to obtain such review.

Petitioner does not dispute that he was subject to a mandatory eight-year term of imprisonment based on his conviction for Count Three of the indictment.  His trial

counsel conceded as much at his original sentencing hearing.  (Doc. No. 9-1 at 34.)  At Petitioner's resentencing in 2011, the trial court imposed the same 15-year sentence it had originally imposed.  Accordingly, the five-year delay did not result in Petitioner being imprisoned beyond the date on which he would have been released after his resentencing.  The state court's decision that Petitioner was not prejudiced by the delay was neither contrary to nor an unreasonable application of federal constitutional law.  This ground for relief lacks merit.

### C.    Fifth Ground for Relief: Judicial Bias

In his fifth ground for relief, Petitioner contends that Judge Markus erred when he declined to resentence Petitioner a second time after the original trial court judge recused himself.  Specifically, Petitioner contends that, at his resentencing hearing, the original trial court judge was "conflicted, defensive about his culpability for delay, and was seeking to show the delay had no effect on resentencing," and, thus, he was entitled to a second resentencing.  (Doc. No. 1 at 37.)  The state appellate court rejected Petitioner's argument on this point, noting, in part, that "Martinez did not raise any issues of bias or concerns of a conflict at the resentencing hearing, when [the original trial court judge] resentenced Martinez to the same term of imprisonment originally imposed."  *Martinez II*, 2012-Ohio-3750 at ¶ 28.

It is axiomatic that due process requires that a judge be unbiased.  *Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008).  "But it is also clear that judicial disqualification based on a likelihood or an appearance of bias is not always of *constitutional* significance; indeed, most matters relating to judicial qualification do not

rise to a constitutional level." *Id.* at 400.  The Supreme Court has recognized only two situations in which "something less than actual bias" constitutes a violation of due process.  *Id.*  These are: (1) where the judge has a "'direct, personal, substantial pecuniary interest'" in reaching a specific conclusion; and (2) in certain contempt cases. *Id.* (internal quotation marks and citations omitted).

Here, Petitioner offers only unsupported allegations of judicial bias by the original trial court judge.  He points to no evidence in the record – and there is no such evidence – that the original trial court judge was biased against him at the time of his resentencing.  Further, neither of the two situations described in *Railey* apply in this case such that even absent actual bias, there was a violation of due process. Accordingly, the state court neither contradicted nor unreasonably applied established federal constitutional law when it determined that Petitioner was not entitled to a second resentencing by Judge Markus in this matter.  This ground for relief lacks merit.

### VI. Conclusion

For the reasons given above, the petition should be dismissed with prejudice.


Date: September 9, 2015                         /s/ Nancy A. Vecchiarelli
                                                United States Magistrate Judge

### **OBJECTIONS**

        **Any objections to this Report and Recommendation must be filed with the
Clerk of Courts within fourteen (14) days after the party objecting has been served
with a copy of this Report and Recommendation.  Failure to file objections within
the specified time may waive the right to appeal the District Court's order.  *See
United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474
U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

44